UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRÉ FRANKLIN,<br><br>  Plaintiff,<br><br>  v.<br><br>SALEH OBAISI, REGINA BEATTIE, RANDY PFISTER, TARRY WILLIAMS, and WEXFORD HEALTH SOURCES, INC.,<br><br>  Defendants. | No. 15 CV 9412<br><br>Judge Manish S. Shah |

### ORDER

The motion to dismiss Counts II through IV of plaintiff's amended complaint, [27], is granted in part and denied in part. Count III is dismissed, with prejudice; governing case law precludes plaintiff from holding Wexford Health Source vicariously liable for an employee's constitutional torts under Section 1983. The motion is otherwise denied.

### STATEMENT

In 2008, André Franklin was diagnosed with Crohn's disease, a chronic inflammatory condition affecting the gastrointestinal tract. *See* [9] ¶ 11.[1] Symptoms of Crohn's disease include fever, persistent diarrhea, bloody stool, and intense abdominal pain. *See id.* There is no cure for the condition, but symptoms may be managed with medication and some alterations in diet. *See id.* ¶ 12. If left untreated, however, patients with Crohn's disease may be unable to control their bowel movements, and may develop bowel obstructions or abscesses in the intestine. *See id.* ¶ 13. Weight loss and malnutrition are also common problems. *See id.* Franklin claims that, beginning in January 2014, he received inadequate care for his Crohn's disease from medical personnel at Stateville Correctional Center, where he has been incarcerated. *See id.* ¶¶ 4, 14.

---

[1] Bracketed numbers refer to entries on the district court's docket; referenced page numbers are from the CM/ECF header placed at the top of filings.

In January 2014, Franklin was diagnosed with a bacterial infection and was sent from Stateville to the University of Illinois at Chicago Hospital for treatment. *See id.* ¶ 15. A gastrointestinal specialist at UIC wrote Franklin prescriptions for medications to treat his condition (including his Crohn's disease), but medical personnel at Stateville would not fill all of the prescriptions. *See id.* ¶ 16. At a follow-up visit on April 23, the gastrointestinal specialist at UIC again wrote Franklin prescriptions for his Crohn's disease, and ordered that a stool sample be tested for infection. *See id.* ¶ 17. Franklin then returned to Stateville, where he saw Dr. Saleh Obaisi, an employee of Wexford Health Sources, on April 28, 2014. *See id.* ¶¶ 5, 18. Wexford is a Florida corporation that contracts with the Illinois Department of Corrections to provide healthcare services to inmates in IDOC custody. *See id.* ¶ 9. Franklin told Dr. Obaisi about the bacterial infection and described his ongoing medical issues, which included intense abdominal pain and weight loss. *See id.* ¶ 18. He explained that he had not been receiving all of the medications prescribed by the UIC specialist for managing his Crohn's disease, and gave Dr. Obaisi a stool sample for testing. *See id.* On May 8, 2014, Franklin learned from a lab technician at Stateville that his stool had tested positive for *Clostridium difficile* bacteria. *See id.* ¶ 19. *C. difficile* bacteria produce toxins that attack the lining of the intestine,[2] and infections from these bacteria, if left untreated, may be life-threatening, *see id.* ¶ 15. It is unclear whether Franklin was treated for the *C. difficile* infection at that time.

In June 2014, Franklin's gastrointestinal problems were still bothering him, and he was sent back to UIC. *See id.* ¶ 20. The UIC specialist again wrote him prescriptions for medications to address the Crohn's disease, but Franklin was still unable to fill all of the prescriptions upon his return to Stateville. *See id.* Franklin complained about the prescription problem to Dr. Obaisi on July 14, and also described his recent weight loss (Franklin had lost 15 pounds in the past couple of months). *See id.* ¶ 21. Dr. Obaisi explained that Franklin would not receive certain of the prescribed medications because Dr. Obaisi had determined he did not need them, and because "Wexford would not pay for the[m] anyway." *Id.* Franklin was again hospitalized for problems related to his Crohn's disease on August 20, 2014—this time for seven days. *Id.* ¶ 22.

In just four months, Franklin lost 50 pounds. *Id.* ¶ 33. The gastrointestinal specialist at UIC prescribed special protein drinks for him, but Dr. Obaisi would not give those to Franklin, either, because Wexford would not cover the cost. *See id.* As of February 2016, Franklin still was not receiving all of his prescribed medications, including medications to treat diarrhea and to relieve rectal pain and bleeding. *See id.* ¶¶ 26, 32. He was forced to wear adult diapers at night because he could no longer

---

[2] *See* http://www.mayoclinic.org/diseases-conditions/c-difficile/basics/causes/con-20029664 (last visited June 13, 2016).

control his bowel movements while sleeping, and he experienced intense stomach pain and blood loss. *See id.* ¶¶ 36–37. He also suffered from repeated *C. difficile* infections, which ultimately required him to undergo a fecal transplant. *See id.* ¶ 36.[3] Between January 2014 and February 2016, Franklin was hospitalized more than 10 times. *See id.* ¶ 37.

Franklin filed suit under 42 U.S.C. § 1983, bringing claims against Dr. Obaisi (Count I) and Wexford (Count II) for deliberate indifference to Franklin's medical needs, and against Wexford for *respondeat superior* (Count III). Franklin also brought a state-law claim for intentional infliction of emotional distress (Count IV). Wexford and Dr. Obaisi move to dismiss Counts II through IV of the amended complaint. [27]. (Franklin's claims against other individuals, also named as defendants to Counts I and IV, have been answered.) In reviewing a motion to dismiss under Rule 12(b)(6), a district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (quoting *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)). For the plaintiff to move forward, his complaint must contain a short and plain statement showing that he is entitled to relief. Fed. R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the claim must be "plausible on its face") (citation omitted).

*Deliberate Indifference (Counts II and III)*

"The Eighth Amendment safeguards . . . prisoner[s] against a lack of medical care that may result in pain and suffering which . . . would [not] serve any penological purpose." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (quoting *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009)) (internal quotation marks omitted). To state an Eighth Amendment claim for inadequate medical care, a prisoner must allege: (1) that he suffered from an objectively serious medical condition; and (2) that a prison official was deliberately indifferent to that condition—that is, that the official recklessly disregarded a substantial risk to the inmate's health. *See id.* at 776–77 (citations omitted). Defendants here do not dispute that Franklin suffered from an objectively serious medical condition; nor do they dispute that the complaint adequately pleads that Dr. Obaisi was deliberately indifferent to that condition. Defendants contend that Wexford, Dr. Obaisi's employer, cannot be held liable under Section 1983 because *respondeat superior* does not apply, and because Franklin has failed to state a proper claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

---

[3] Fecal transplants are performed to restore a patient's healthy intestinal bacteria by placing in their colon stool from another individual. *See* http://www.mayoclinic.org/diseases-conditions/c-difficile/basics/treatment/con-20029664 (last visited June 13, 2016).

Defendants are correct that, under existing case law, Section 1983 "does not permit liability to rest on the doctrine of *respondeat superior*." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Maniscalco v. Simon*, 712 F.3d 1139, 1145–46 (7th Cir. 2013)). Although the Seventh Circuit has in recent years questioned the soundness of this approach—especially as it concerns the putative liability of private corporations (like Wexford), *see Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789–96 (7th Cir. 2014)—the law, as this court must apply it, has not changed, *see Perez*, 792 F.3d at 780 ("In this circuit, a private corporation cannot be held liable under § 1983 unless it maintained an unconstitutional policy or custom.") (citation omitted). Franklin's argument that *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir.1982), should be overruled is noted, but this is an argument he must pursue on appeal. Count III of the amended complaint is accordingly dismissed with prejudice.

To proceed with his claim against Wexford, Franklin must therefore allege that a Wexford custom, practice, or policy was the moving force behind his injuries. *See Pyles*, 771 F.3d at 409–10 (citing *Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010)); *see also Perez*, 792 F.3d at 780 (citation omitted); *cf. Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2009) (explaining that in Section 1983 suits against government bodies, the plaintiff must allege that an "official policy is responsible for the deprivation of rights" (quoting *Monell*, 436 U.S. at 690)) (emphasis omitted). Franklin has cleared this hurdle. According to Franklin, Dr. Obaisi told him on multiple occasions that he would not give Franklin medications and other items prescribed by the gastrointestinal specialist at UIC (*e.g.*, protein drinks) because Wexford would not pay for those treatments; Franklin needed those treatments to properly manage his Crohn's disease; and, because he was unable to obtain those treatments, Franklin lost an alarming amount of weight, lost control of his bowels while sleeping, and suffered from severe stomach pains and repeated bacterial infections. Accepting these allegations as true, and assuming that Dr. Obaisi's actions amounted to deliberate indifference (which defendants do not at this stage dispute), Franklin has plausibly tied the constitutional violation at issue to a Wexford policy or practice of not paying for treatment. Defendants' motion to dismiss Count II of the amended complaint is denied.

*Intentional Infliction of Emotional Distress (Count IV)*

To recover for intentional infliction of emotional distress in Illinois, the plaintiff must show: (1) that the defendant engaged in "extreme and outrageous" conduct; (2) that the defendant intended to cause the plaintiff severe emotional distress, or at least knew there was a high probability that the defendant's conduct would cause severe emotional distress; and (3) that the defendant's conduct in fact caused severe emotional distress. *Cairel v. Alderden*, — F.3d —, No. 14-1711, 2016 WL 2641836, at *9 (7th Cir. May 5, 2016) (quoting *Feltmeier v. Feltmeier*, 207 Ill.2d

4

263, 798 N.E.2d 75, 80 (2003)); *see also Dixon v. Cnty. of Cook*, 819 F.3d 343, 351 (7th Cir. 2016) (citation omitted). Defendants argue that Franklin's emotional-distress claim against Dr. Obaisi must be dismissed because Franklin has not plausibly alleged that the doctor's conduct was extreme and outrageous. *See* [27] at 5. Dr. Obaisi evaluated Franklin on multiple occasions, secured for him numerous evaluations by an outside specialist, and agreed to provide medications and other treatments ordered by those specialists. These are not actions, say defendants, that "go beyond all possible bounds of decency." *Id.* (quoting *Swearnigen-El v. Cook County Sheriff's Department*, 602 F.3d 852, 864 (7th Cir. 2010)); *cf. Dixon*, 819 F.3d at 351 (noting that, to be extreme and outrageous, conduct must be "regarded as intolerable in a civilized community" (quoting *Feltmeier*, 798 N.E.2d at 83)).

Whether a defendant's conduct was extreme and outrageous turns on a number of factors, including the degree to which the defendant held power or authority over the plaintiff, whether the defendant knew the plaintiff was particularly susceptible to emotional distress, and whether the defendant reasonably believed his objective was a legitimate one. *See Cairel*, 2016 WL 2641836, at *9 (citations omitted). According to Franklin's complaint, Dr. Obaisi maintained a significant level of control over Franklin's healthcare at Stateville and, consequently, over Franklin's health. Though Franklin was permitted to see outside specialists from time to time, it was Dr. Obaisi who determined which medications or therapies Franklin would in fact receive. *See* [9] ¶¶ 21, 23, 33. And Dr. Obaisi allegedly denied Franklin certain treatments for reasons of economy, all the while knowing that other physicians had deemed those treatments necessary to manage Franklin's condition, and that Franklin was losing weight and suffering in pain without them. Dr. Obaisi may have believed that his decisions were appropriate, and facts uncovered in discovery may reveal that such a belief was reasonable. But this is an issue for a later day.

Franklin has plausibly alleged that Dr. Obaisi knew Franklin "was not malingering," *Dixon*, 819 F.3d at 351, but nevertheless denied him needed medical care. This is enough to avoid dismissal of Franklin's emotional-distress claim. Defendants' motion to dismiss Count IV of the amended complaint is therefore denied.

ENTER:

Date: 6/14/16

Manish S. Shah
U.S. District Judge

5